# 14-1712

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

WILLIAM I. KOCH,
*Plaintiff-Counter-Defendant-Appellee*,

v.

ERIC GREENBERG,
*Defendant-Counter-Claimant-Appellant.*

ZACHYS WINE & LIQUOR STORE, INC., a New York corporation,
ZACHYS WINE AUCTIONS INC., a New York corporation,
*Defendants*,

MR. JUSTIN CHRISTOPH, MR. JOHN KAPON,
*Intervenors.*

On Appeal from the United States District Court
for the Southern District of New York

## PAGE-PROOF REPLY BRIEF OF APPELLANT ERIC GREENBERG

DAVID C. FREDERICK
DANIEL G. BIRD
W. JOSS NICHOLS
KELLOGG, HUBER, HANSEN, TODD,
  EVANS & FIGEL, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
(202) 326-7999 (facsimile)
*Attorneys for Defendant-Counter-
Claimant-Appellant Eric Greenberg*

March 17, 2015

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ............................................................................. iii

ARGUMENT:

I. GREENBERG'S JMOL IS PROPERLY BEFORE THE COURT ......................................................................................4

    A. Koch Consented To The Procedure He Now Calls Deficient ........................................................................4

    B. In All Events, The Judgment Should Be Reviewed ...................6

II. GREENBERG DID NOT COMMIT FRAUD ....................................8

    A. Koch's Reliance Was Unjustified As A Matter Of Law ........................................................................................8

        1. As a Matter of Law, Greenberg Did Not Have "Peculiar Knowledge" ............................................8

            a. Koch ignores the law of "peculiar knowledge" ..............................................................8

            b. Purported difficulties of inspection are legally irrelevant ...........................................11

            c. Purported knowledge of immaterial facts is legally irrelevant .....................................13

            d. Koch's misleading chart is immaterial.................15

        2. Even Assuming Greenberg Had "Peculiar Knowledge," Koch's Reliance Was Unjustified as a Matter of Law ......................................18

    B. Greenberg Did Not Make Actionable Misrepresentations ................................................................19

        1. Greenberg Did Not Make Indirect Misrepresentations to Koch ...........................................19

   2.  Alternatively, Koch Has Not Identified Any
Actionable Misrepresentations ........................................22

  C. Greenberg Did Not Owe Koch A Duty To Disclose ................23

   1.  Greenberg Had No Duty To Disclose
Readily Available Information to a Stranger..................23

   2.  Greenberg Made No Partial Statements to
Koch...............................................................................24

III. GREENBERG DID NOT VIOLATE GBL § 349 AND
§ 350 .......................................................................................25

  A. The Auction Was Not Materially Misleading...........................25

  B. Consigning High-End Wine For Auction Is Not
Consumer-Oriented Conduct ....................................................26

IV. GREENBERG IS NOT LIABLE FOR PUNITIVE
DAMAGES ...............................................................................27

  A. The Punitive-Damages Verdict Is Reviewable.........................27

  B. Greenberg's Conduct Was Neither Reprehensible
Nor Aimed At The Public .........................................................28

CONCLUSION.............................................................................................29

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page

**CASES**

*52 Park LLC*, *In re*:

No. 02 Civ. 7977(SHS) (S.D.N.Y. Mar. 20, 2003), *aff'd*,
81 F. App'x 380 (2d Cir. 2003) ......................................................................13

81 F. App'x 380 (2d Cir. 2003) ......................................................................13

*Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank*, 731 F.2d 112
(2d Cir. 1984)................................................................................... 23-24

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*, No. 08 Civ.
7508(SAS), 2013 WL 664176 (S.D.N.Y. Feb. 25, 2013) ...........................10

*ACA Galleries, Inc. v. Kinney*, 928 F. Supp. 2d 699 (S.D.N.Y. 2013),
*aff'd*, 552 F. App'x 24 (2d Cir. 2014) ....................................................10, 13

*Amend v. Hurley*, 59 N.E.2d 416 (N.Y. 1944)........................................................24

*American Protein Corp. v. AB Volvo*, 844 F.2d 56 (2d Cir. 1988) ..........................6

*Best Brands Beverage, Inc. v. Falstaff Brewing Corp.*, 842 F.2d 578
(2d Cir. 1987) ..............................................................................................6

*Black v. Chittenden*, 503 N.E.2d 1370 (N.Y. 1986) ...............................................10

*Bracey v. Board of Educ.*, 368 F.3d 108 (2d Cir. 2004) ............................................5

*Brink's Inc. v. City of New York*, 717 F.2d 700 (2d Cir. 1983) ..............................27

*Century Pac., Inc. v. Hilton Hotels Corp.*, 354 F. App'x 496
(2d Cir. 2009)...............................................................................................18

*Charles Adams Importers, Ltd. v. Dana*, 503 N.Y.S.2d 53 (App. Div.
1st Dep't 1986) ............................................................................................29

*Citibank, N.A. v. Plapinger*, 485 N.E.2d 974 (N.Y. 1985)........................................8

*Country World, Inc. v. Imperial Frozen Foods Co.*, 589 N.Y.S.2d 81
(App. Div. 2d Dep't 1992).............................................................................10

*Cristallina S.A. v. Christie, Manson & Woods Int'l, Inc.*,
  502 N.Y.S.2d 165 (App. Div. 1st Dep't 1986)................................................18

*Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775 (2d Cir. 2003) ......8, 9, 13, 14

*Danann Realty Corp. v. Harris*, 157 N.E.2d 597 (N.Y. 1959)................................13

*DIMON Inc. v. Folium, Inc.*, 48 F. Supp. 2d 359 (S.D.N.Y. 1999).........................10

*Doctor's Assocs., Inc. v. Weible*, 92 F.3d 108 (2d Cir. 1996) ..................................7

*Donovan v. Aeolian Co.*, 200 N.E. 815 (N.Y. 1936)................................................24

*Fabri v. United Techs. Int'l, Inc.*, 387 F.3d 109 (2d Cir. 2004) ...............................7

*Foxley v. Sotheby's Inc.*, 893 F. Supp. 1224 (S.D.N.Y. 1995).........................10, 12

*Galdieri-Ambrosini v. National Realty & Dev. Corp.*, 136 F.3d 276
  (2d Cir. 1998)................................................................................................6

*Grumman Allied Indus., Inc. v. Rohr Indus., Inc.*, 748 F.2d 729
  (2d Cir. 1984)................................................................9, 11, 12, 24

*Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675 (N.Y. 2012)......................26

*Long v. Fitzgerald*, 659 N.Y.S.2d 544 (App. Div. 3d Dep't 1997).........................9

*MAFG Art Fund, LLC v. Gagosian*, 998 N.Y.S.2d 342 (App. Div.
  1st Dep't 2014) ..............................................................................................10

*Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 83 (2d Cir. 1998)...............................5, 6

*Meacham v. KAPL, Inc.*, 381 F.3d 56 (2d Cir. 2004), *vacated and
  remanded*, 544 U.S. 957 (2005) ...................................................................6

*Meriwether v. Coughlin*, 879 F.2d 1037 (2d Cir. 1989) .......................................4, 5

*Minpeco, S.A. v. ContiCommodity Servs., Inc.*, 552 F. Supp. 332
  (S.D.N.Y. 1982)...............................................................................................24

*Moretto v. G&W Elec. Co.*, 20 F.3d 1214 (2d Cir. 1994)........................................5

*Moustakis v. Christie's, Inc.*, 892 N.Y.S.2d 83 (App. Div. 1st Dep't
  2009) ........................................................................................27, 29

iv

*Nigro v. Lee*, 882 N.Y.S.2d 346 (App. Div. 3d Dep't 2009).........................10, 13, 19

*Ortiz v. Jordan*, 562 U.S. 180 (2011) ......................................................................7

*P. Chimento Co. v. Banco Popular de Puerto Rico*, 617 N.Y.S.2d 157
    (App. Div. 1st Dep't 1994).......................................................................12

*Petraccione v. Simmons*, 483 N.Y.S.2d 810 (App. Div. 3d Dep't
    1984) ...........................................................................................................10

*Piesco v. Koch*, 12 F.3d 332 (2d Cir. 1993)..........................................................6

*Psenicska v. Twentieth Century Fox Film Corp.*, 409 F. App'x 368
    (2d Cir. 2009)..........................................................................................8, 9

*Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*,
    68 F.3d 1478 (2d Cir. 1995) ......................................................................24

*Ross v. Louise Wise Servs., Inc.*, 868 N.E.2d 189 (N.Y. 2007) .............................28

*Rothstein v. Carriere*, 373 F.3d 275 (2d Cir. 2004) ..............................................7

*Rudnick v. Glendale Sys., Inc.*, 635 N.Y.S.2d 657 (App. Div. 2d Dep't
    1995) .........................................................................................................9, 11

*SIPC v. BDO Seidman, LLP*, 746 N.E.2d 1042 (N.Y. 2001) ...........................20, 21

*S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629
    (2d Cir. 1996)........................................................................................25, 26

*Steinhardt Group Inc. v. Citicorp*, 708 N.Y.S.2d 91 (App. Div.
    1st Dep't 2000) ...........................................................................................10

*T.T. Exclusive Cars, Inc. v. Christie's Inc.*:

    No. 96 Civ. 1650(LMM), 1996 WL 737204 (S.D.N.Y. Dec. 24,
    1996), *aff'd*, No. 97-7089 (2d Cir. Oct. 6, 1997) ....................................8, 10

    Summary Order, No. 97-7089 (2d Cir. Oct. 6, 1997) ....................................8

*Tahini Invs., Ltd. v. Bobrowsky*, 470 N.Y.S.2d 431 (App. Div.
    2d Dep't 1984)........................................................................................10, 11

*Tasini v. AOL, Inc.*, 505 F. App'x 45 (2d Cir. 2012)..............................................25

*Todd v. Pearl Woods, Inc.*, 248 N.Y.S.2d 975 (App. Div. 2d Dep't 1964) ................................................................................10

*Tolbert v. Queens College*, 242 F.3d 58 (2d Cir. 2001) ...........................5

*United States v. Ortiz*, 621 F.3d 82 (2d Cir. 2010) .....................................5

*UST Private Equity Investors Fund, Inc. v. Salomon Smith Barney*, 733 N.Y.S.2d 385 (App. Div. 1st Dep't 2001)..............................9

*Vasbinder v. Ambach*, 926 F.2d 1333 (2d Cir. 1991)...............................27

*Warner Theatre Assocs. L.P. v. Metropolitan Life Ins. Co.*, 149 F.3d 134 (2d Cir. 1998) ......................................................9

*Winfield v. Trottier*, 710 F.3d 49 (2d Cir. 2013)...................................7, 26

*Yuzwak v. Dygert*, 534 N.Y.S.2d 35 (App. Div. 4th Dep't 1988) ...........28

## STATUTES AND RULES

N.Y. Gen. Bus. Law:

§ 349 ..............................................................................................25

§ 350 ..............................................................................................25

Fed. R. Civ. P.:

Rule 50.............................................................................4, 6, 7, 27

Rule 50(a) ..................................................................................5, 27

Rule 50(b) ........................................................................................5

## OTHER MATERIALS

9B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* (3d ed. 2008)...............................................................5

A sophisticated purchaser at a fine wine auction – who signs a contract agreeing to buy "as is" with specific disclaimers about the wine's provenance and authenticity, and who has full, but unexercised pre-purchase inspection rights – cannot establish justifiable reliance for a fraud claim.  To hold otherwise would disrupt auction practices that routinely occur in this Circuit and would subject to potential liability every consignor who knows incrementally more information than the auctioneer who selects merchandise for sale.

Appellee William Koch's lawyers successfully demonized Appellant Eric Greenberg to a jury that awarded $12 million in punitive damages over putatively bad wine for which Greenberg offered a full refund.  Greenberg was justifiably angry after learning he may have purchased questionable wine, and he relied on industry-standard refund procedures to resolve those questions.  Koch, by contrast, scorned the provisions of the contract he signed, and relied on salacious hearsay and out-of-context sound bites to transform Greenberg's justifiable anger into a purported motive for including 24 questionable bottles among a 17,000-bottle consignment.  Though the jury was infatuated by Koch's sensationalism, this case never should have gotten that far.  Once the fraud claim against auctioneer Zachys was dismissed for Koch's unjustified reliance, the district court erred in not also dismissing the fraud claim against Greenberg on the same ground.  The court was led into error by Koch's erroneous argument that Greenberg had "peculiar

knowledge" that made Greenberg-as-consignor subject to fraud liability even though Zachys-as-auctioneer was not.

That theory of fraud must fail in this case. The law is clear that a sophisticated purchaser cannot establish justifiable reliance when he willfully blinds himself to the truth regarding specifically disclaimed information. Koch cites no case finding justifiable reliance under like circumstances. Both the asserted difficulties of inspection and Greenberg's purported knowledge of immaterial facts are legally irrelevant where Koch indisputably had access to all the material facts necessary to evaluate authenticity.

As a factual matter, Koch's theory fails because every material fact about the supposed inauthenticity of each specific bottle consisted of *externally observable* indicia – the cork, labeling, capping, and bottle. Experts evaluate authenticity based on those external features. But experts can (and do) disagree with each other, and no one can say for certain whether the liquid inside is what the vintner bottled unless the bottle is opened and tasted – which has never happened here. Koch, therefore, seeks to establish fraud by arguing that Greenberg knew more about the state of his collection than he told Zachys. None of Greenberg's supposed knowledge, however, was necessary to evaluate authenticity or tied to any specific bottle that Koch questions.

Before the auction, Koch could have assessed the external indicia of authenticity about the bottles he purchased and thereby protected his interests. That is exactly what he did after the auction and at trial, where his experts relied entirely on external indicia to evaluate the bottles. He chose to wait because he did not consider pre-auction inspection "worthwhile." If accepted by this Court, Koch's choice not to inspect before he bought – which he now justifies by arguing he bought so many bottles that inspecting them all would have been too burdensome – would establish one set of rules for rich people and another set for everyone else.

The legally sanctioned intermediary role of Zachys also precludes Greenberg's fraud liability. Greenberg relied on Zachys – his expert fiduciary – to exercise independent judgment to inspect his wines, select them for auction, describe them in the Catalog, and market them to bidders. Greenberg did not perform those tasks. In those circumstances, any misrepresentations in the Catalog are not attributable to Greenberg as a matter of law. And, because Greenberg neither knew Koch nor had any reason to believe Koch would willfully blind himself to authenticity, as a matter of law Greenberg owed him no duty to disclose additional information.

Those central legal deficiencies in the judgment below also mandate reversal of the GBL and punitive-damages verdicts. *See infra* Parts III, IV.

## I. GREENBERG'S JMOL IS PROPERLY BEFORE THE COURT

### A. Koch Consented To The Procedure He Now Calls Deficient

Greenberg undisputedly made a timely Rule 50 motion, and his brief sufficiently specified his grounds. Koch claims waiver because Greenberg did not specify in his oral motion. But Koch consented to that procedure, which precludes his waiver argument.

Greenberg did not specify the grounds for his Rule 50 motion when he made it because everyone agreed that his post-verdict specification was "deemed made" pre-verdict. Greenberg expressly requested that his motion be "deemed made now with briefing to be filed in due course." Tr. 2109. The court accepted Greenberg's proposal, *see id.* ("That's fine. I'll reserve on that, subject to any briefing."), and Koch did not object.[1] Koch cites no case finding Rule 50 waiver under similar circumstances.

This Court has sanctioned such post-deadline specification. *See Meriwether v. Coughlin*, 879 F.2d 1037, 1040-42, 1045-47 (2d Cir. 1989). In *Meriwether*, the defendants stated they "wish[ed] to move for a judgment notwithstanding the verdict," but, with the consent of the court and plaintiffs, did not specify their grounds until filing a written memorandum after the 10-day jurisdictional deadline. *Id.* at 1040-41. This Court held that the oral motion was timely, *id.* at 1041-42, and

---

[1] By contrast, Koch *did* object when Greenberg made his pre-verdict Rule 50 motion at the punitive-damages stage "subject to further briefing." Tr. 2474-75.

affirmed the district court's grant of partial JMOL on alternative grounds specified

by the defendant, *id.* at 1045-47.[2]  Nothing in the Rules or the record justifies

rejecting the same procedure followed in *Meriwether*, especially when everyone

agreed Greenberg's Rule 50(a) specification was "deemed made" pre-verdict.

If Koch thought Greenberg's motion deficient, he needed to object when

the court accepted it.  "[W]hen the party moving for JMOL fails to articulate its

motion with sufficient specificity, the non-moving party *must object* in order to

preserve the issue for appeal."  *Marfia v. T.C. Ziraat Bankasi*, 147 F.3d 83, 87

(2d Cir. 1998) (emphasis added); *see*, *e.g.*, *Moretto v. G&W Elec. Co.*, 20 F.3d

1214, 1219-20 (2d Cir. 1994) (specificity objection waived because non-movant

"did not complain at the time" that oral Rule 50(a) motion lacked specificity).

These "waive-the-waiver (more accurately, forfeit the forfeiture) rulings" prevent

appellees from springing procedural traps on their adversaries or the district court.

*United States v. Ortiz*, 621 F.3d 82, 86 (2d Cir. 2010).[3]  Koch's after-the-fact

objection improperly springs just such a trap.  Here, "everyone in the courtroom"

---

[2] As under Rule 50(a), a Rule 50(b) motion "must state the grounds on which it was made."  9B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2537, at 605 (3d ed. 2008).

[3] Koch's cases do not support his contention that specificity is unwaivable. *See Bracey v. Board of Educ.*, 368 F.3d 108, 117 (2d Cir. 2004) (finding waiver because appellant "never" moved under Rule 50(a)); *Tolbert v. Queens College*, 242 F.3d 58, 77 (2d Cir. 2001) (finding waiver because appellant made "no mention" of appellate argument in JMOL brief).

understood Greenberg's proposal and the grounds for his motion, which the parties

had briefed repeatedly. *Marfia*, 147 F.3d at 87. By consenting to Greenberg's

proposal, Koch waived his right to object later.

**B.     In All Events, The Judgment Should Be Reviewed**

This Court looks at "all the circumstances" to determine whether to review

Rule 50 arguments, including whether the non-movant can identify "additional

evidence" that would address the movant's JMOL arguments. *Galdieri-Ambrosini*

*v. National Realty & Dev. Corp.*, 136 F.3d 276, 288-89 (2d Cir. 1998).[4] Identifying

no prejudice, Koch "claimed neither that [he] would have nor that [he] could have

presented any additional evidence to compensate for deficiencies in [his] proof."

*American Protein Corp. v. AB Volvo*, 844 F.2d 56, 62 (2d Cir. 1988). This failure

reveals there was "no possibility that [Greenberg] misled [Koch] into holding back

any rebuttal evidence [Koch] might have had" on any issues raised on appeal. *Best*

*Brands Beverage, Inc. v. Falstaff Brewing Corp.*, 842 F.2d 578, 587 (2d Cir. 1987).

Review also is appropriate because Greenberg's appellate issues are "purely

legal and no fact finding is required." *Meacham v. KAPL, Inc.*, 381 F.3d 56, 69

(2d Cir. 2004), *vacated and remanded on other grounds*, 544 U.S. 957 (2005).

This Court "may correct a purely legal error despite the lack of a timely request in

---

[4] Koch's cases are consistent with this Court's "all the circumstances"
principle. *See*, *e.g.*, *Piesco v. Koch*, 12 F.3d 332, 341 (2d Cir. 1993).

the district court." *Fabri v. United Techs. Int'l, Inc.*, 387 F.3d 109, 119 (2d Cir. 2004).

Greenberg's appellate arguments go to "'the substance and clarity of pre-existing law,'" not "'what occurred, or why an action was taken or omitted.'" *Winfield v. Trottier*, 710 F.3d 49, 53 (2d Cir. 2013) (quoting *Ortiz v. Jordan*, 562 U.S. 180, 190 (2011)). Indeed, the district court repeatedly rejected Greenberg's legal arguments under an erroneous understanding of the law before trial. *See*, *e.g.*, DN37, at 7-8; DN335, at 12-15; *Rothstein v. Carriere*, 373 F.3d 275, 284 (2d Cir. 2004) (rationale for Rule 50 specificity "does not apply" under such circumstances); Br. 39-40.

Finally, review is necessary to prevent "manifest injustice" because Koch "did not (and could not) present evidence to sustain a verdict" under the law "*as properly stated.*" *Doctor's Assocs., Inc. v. Weible*, 92 F.3d 108, 113-14 (2d Cir. 1996) (internal quotations omitted).[5]

---

[5] Koch's cases on manifest injustice (at 31-32) underscore the need for review, as most fully addressed the legal questions at issue and the rest have nothing to do with Rule 50.

## II. GREENBERG DID NOT COMMIT FRAUD

### A. Koch's Reliance Was Unjustified As A Matter Of Law

Koch concedes (at 34) "a party cannot justifiably rely on a representation that is specifically disclaimed in an agreement." *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 785 (2d Cir. 2003). The contract here sold the wine "'AS IS' without any representations or warranties" and expressly disclaimed "authenticity, provenance, and merchantability of the wine." Br. 33.[6] Koch nevertheless claims (at 34) Greenberg can defeat liability "only" by defeating "peculiar knowledge," which is a factual question for the jury. That argument has no merit – purely as a matter of law – because (1) Greenberg did not have "peculiar knowledge" of any material facts; and (2) even assuming otherwise, Koch's reliance was unjustified.

### 1. As a Matter of Law, Greenberg Did Not Have "Peculiar Knowledge"

#### a. Koch ignores the law of "peculiar knowledge"

Koch incorrectly argues (at 35) "peculiar knowledge" is always "a factual question left to the jury." This Court repeatedly has found circumstances in which a defendant lacked "peculiar knowledge" as a matter of law. *See*, *e.g.*, *Psenicska v.*

---

[6] Koch (at 34-35 n.9) misreads *Citibank, N.A. v. Plapinger*, 485 N.E.2d 974 (N.Y. 1985), which supports Greenberg because the auction contract contained specific disclaimers. Br. 32-34; *see T.T. Exclusive Cars, Inc. v. Christie's Inc.*, No. 96 Civ. 1650(LMM), 1996 WL 737204, at *6 (S.D.N.Y. Dec. 24, 1996), *aff'd*, Summary Order at 4, No. 97-7089 (2d Cir. Oct. 6, 1997) ("specific disclaimers" in auction catalog "expressly accepted" when plaintiff "placed its bid, preclude any claim of reliance").

*Twentieth Century Fox Film Corp.*, 409 F. App'x 368, 371 (2d Cir. 2009); *Dallas*, 352 F.3d at 785-86; *Warner Theatre Assocs. L.P. v. Metropolitan Life Ins. Co.*, 149 F.3d 134, 136 (2d Cir. 1998); *Grumman Allied Indus., Inc. v. Rohr Indus., Inc.*, 748 F.2d 729, 738 (2d Cir. 1984).

The question, therefore, is *when* "peculiar knowledge" is purely a legal question. This Court has given the answer: A purchaser cannot establish "peculiar knowledge" when he (a) is sophisticated, (b) enters a contract with specific disclaimers, and (c) refuses an opportunity to learn the truth. Br. 36-37.

Those three elements together defeat "peculiar knowledge" and render reliance unjustified as a matter of law. *See*, *e.g.*, *Dallas*, 352 F.3d at 785-86 (no peculiar knowledge as a matter of law where sophisticated plaintiff signed "as is" contract and disregarded "independent means of learning" the truth); *Grumman*, 748 F.2d at 737-38 (same); *UST Private Equity Investors Fund, Inc. v. Salomon Smith Barney*, 733 N.Y.S.2d 385, 386-87 (App. Div. 1st Dep't 2001) (same). Courts reject peculiar knowledge when plaintiffs far less sophisticated than Koch refuse to learn the truth regarding specifically disclaimed information. *See*, *e.g.*, *Psenicska*, 409 F. App'x at 371-72 (plaintiffs relied on specifically disclaimed representations "without taking any steps to confirm" their truth); *Long v. Fitzgerald*, 659 N.Y.S.2d 544, 546-47 (App. Div. 3d Dep't 1997) (same); *Rudnick v. Glendale Sys, Inc.*, 635 N.Y.S.2d 657, 658 (App. Div. 2d Dep't 1995) (same).

9

Critically, Koch cites *no case* in which a court has found peculiar knowledge when a sophisticated plaintiff refused to seek information regarding specifically disclaimed topics.[7] Koch likewise cites *no case* upholding consignor liability under similar circumstances; all relevant auction cases support Greenberg.[8]

Instead, Koch relies on cases addressing peculiar knowledge in the *absence* of sophistication, disclaimers, and/or refusal to seek the truth.[9] He relies most heavily on *Tahini Investments, Ltd. v. Bobrowsky*, 470 N.Y.S.2d 431 (App. Div.

---

[7] Koch relies on *DIMON Inc. v. Folium, Inc.*, 48 F. Supp. 2d 359 (S.D.N.Y. 1999), which acknowledges the very rule he ignores. *See id.* at 368 (reliance unreasonable "if the plaintiff has the means of learning the facts *and* disclaims reliance on the defendant's representations"). The *DIMON* court created and applied an exception inapplicable here: "if the plaintiff has conducted the appropriate due diligence and reasonably believes that it has corroborated the defendant's representations." *Id.* Koch chose *not* to inspect wine being sold "as is" because he "didn't think it was worthwhile to inspect." Tr. 1073.

[8] *See*, *e.g.*, *Nigro v. Lee*, 882 N.Y.S.2d 346, 348 (App. Div. 3d Dep't 2009); *T.T. Exclusive Cars*, 1996 WL 737204, at *6; *Foxley v. Sotheby's, Inc.*, 893 F. Supp. 1224, 1229-30 (S.D.N.Y. 1995); *see also MAFG Art Fund, LLC v. Gagosian*, 998 N.Y.S.2d 342, 343 (App. Div. 1st Dep't 2014); *ACA Galleries, Inc. v. Kinney*, 928 F. Supp. 2d 699, 702-04 (S.D.N.Y. 2013), *aff'd*, 552 F. App'x 24 (2d Cir. 2014).

[9] *See Black v. Chittenden*, 503 N.E.2d 1370 (N.Y. 1986) (no disclaimer or refusal to investigate); *Abu Dhabi Commercial Bank v. Morgan Stanley & Co.*, No. 08 Civ. 7508(SAS), 2013 WL 664176 (S.D.N.Y. Feb. 25, 2013) (no disclaimer; plaintiff performed due diligence); *Steinhardt Group Inc. v. Citicorp*, 708 N.Y.S.2d 91 (App. Div. 1st Dep't 2000) (disclaimer inapplicable); *Country World, Inc. v. Imperial Frozen Foods Co.*, 589 N.Y.S.2d 81 (App. Div. 2d Dep't 1992) (no disclaimer, discussion of peculiar knowledge, or refusal to investigate); *Petraccione v. Simmons*, 483 N.Y.S.2d 810 (App. Div. 3d Dep't 1984) (no disclaimer; *affirming* fraud dismissal for lack of peculiar knowledge); *Todd v. Pearl Woods, Inc.*, 248 N.Y.S.2d 975 (App. Div. 2d Dep't 1964) (no disclaimer or refusal to investigate).

2d Dep't 1984), but the "rusted drums" at issue there were "buried underground," *id.* at 432, with no indication the plaintiff refused an inspection right. By contrast, Koch refused to inspect Greenberg's bottles, even though he had a contractual right to do so and an inspection would have revealed the facts on which he relied to challenge authenticity. His reliance was therefore unreasonable as a matter of law. *See Grumman*, 748 F.2d at 738 (rejecting reliance on *Tahini*); *Rudnick*, 635 N.Y.S.2d at 658 (same).

> b. Purported difficulties of inspection are legally irrelevant

Koch nevertheless argues (at 37-38) it would have been too difficult for him to inspect 2,700 bottles of wine before the auction. That is legally irrelevant.

*First*, at issue is the reasonableness of purchasing 2,700 bottles without inspection, *not* the reasonableness of inspection alone. Br. 40. If inspecting 2,700 bottles before the auction was "an impossible chore," Opp. Br. 38, then Koch should have purchased fewer bottles.[10]

*Second*, whether Koch personally was "trained in detecting counterfeits" is irrelevant. *Id.* As a billionaire businessman, Ph.D., prominent collector, and

---

[10] No evidence supports Koch's claim (at 38) that the auction industry considers pre-auction inspections "too costly and time consuming." Some bidders inspect. Tr. 1668. Others forgo inspection because buyers generally "trust the information in the catalogs," Tr. 149-50, including industry-standard refund provisions, which are regularly invoked to remedy sales of questionable wines, Tr. 275, 615-16, 1622. Koch accepted refunds from Zachys, TX1081A, even though he rejected Greenberg's, Br. 24-25.

former 50% owner of a wine auction house, Koch indisputably was a sophisticated purchaser who knew about both the danger of fake wine and the "as is" clause. Br. 21-22. Such sophistication defeats peculiar knowledge. *See Foxley*, 893 F. Supp. at 1229 (rejecting plaintiff's alleged "lack of sophistication and familiarity with respect to American Impressionism" because plaintiff "was a sophisticated purchaser of art at auction"); *see also Grumman*, 748 F.2d at 737 ("Where sophisticated businessmen engaged in major transactions enjoy access to critical information but fail to take advantage of that access, New York courts are particularly disinclined to entertain claims of justifiable reliance.").

*Third*, Koch indisputably had "the means and ability to call upon the assistance of . . . experts," *P. Chimento Co. v. Banco Popular de Puerto Rico*, 617 N.Y.S.2d 157, 159 (App. Div. 1st Dep't 1994), including Zachys and Koch's personal wine advisor, Brian Orcutt, who was an auction-house-trained wine expert, Br. 21-22. Koch does not dispute New York caselaw holding that failure to make such inquiries defeats "peculiar knowledge." Br. 38.

*Fourth*, the purported difficulties of inspection are irrelevant now because they were irrelevant to Koch at the time. The reason Koch refused to inspect or inquire about the wine had *nothing to do* with the cost or time involved. Koch simply did not see "the need" to inspect. Tr. 951; *see* Br. 21-22. Koch's legal arguments about the difficulty of inspecting 2,700 bottles are convenient, hypothetical arguments made after-the-fact to justify his willful blindness.

*Fifth*, and in all events, the "very fact" that Koch "felt the need to seek authentication . . . after the purchase indicates that [he] knew how to do so prior to the purchase." *ACA Galleries*, 928 F. Supp. 2d at 704; *Nigro*, 882 N.Y.S.2d at 348 (same); *see also* Order at 3, *In re 52 Park LLC*, No. 02 Civ. 7977(SHS) (S.D.N.Y. Mar. 20, 2003), *aff'd*, 81 F. App'x 380, 381-82 (2d Cir. 2003) (rejecting "peculiar knowledge" as a matter of law because documents "expressly disclaimed the accuracy of the information" and plaintiff "had the opportunity to inspect," notwithstanding "the 'auction type setting' of the transaction" and plaintiff's claim "it could not have ascertained" the truth because of "severe time constraints").

### c. Purported knowledge of immaterial facts is legally irrelevant

Koch asserts (at 38) "Greenberg knew material information no amount of inspection would reveal." Koch errs in contending that everything Greenberg knew about his wine collection was "material" to the authenticity of the specific bottles Koch purchased. Koch had access to the bottles' external indicia of authenticity—"the truth, or the real quality of the subject of the representation," *Danann Realty Corp. v. Harris*, 157 N.E.2d 597, 600 (N.Y. 1959) (internal quotations omitted); other "facts" not necessary to determine authenticity are immaterial. Br. 34, 38-39.

This Court's *Dallas v. CIS* case is directly on point. There, Dallas claimed that CIS had peculiar knowledge of an engine history report showing that the

13

engine Dallas purchased was not airworthy. This Court assumed the report was unobtainable by Dallas, but held the report itself was immaterial because Dallas had "independent means of learning" the truth "about the engine's history." 352 F.3d at 786. CIS therefore lacked peculiar knowledge as a matter of law. *Id.*

The same principle applies here. Even assuming Greenberg knew facts unobtainable by Koch, *but see infra* Part II.A.1.d, those facts were immaterial because Koch had independent means of learning the truth about the authenticity of the bottles he purchased. Like his testifying experts, Koch could have assessed pre-auction all material facts necessary to determine authenticity/merchantability: corks, labels, capsules, and bottles. Br. 6.

Koch disputes (at 41) that only external features are material to "peculiar knowledge." He argues that "Greenberg alone knew the provenance of his wines,"[11] which is important to authenticity and "not detectable by visual inspection." Koch's experts, however, drew authenticity conclusions without knowing anything about provenance. Tr. 1441-44, 1593. And it is undisputed that even a bottle with questionable provenance may be authentic. Tr. 1380-81, 1397-98, 1490-91; Sutcliffe Trial Dep. Tr. 28. Provenance is immaterial to authenticity, therefore, when visual inspection is available.

---

[11] To the contrary, no one – including Greenberg – knew the provenance of the bottles Koch purchased; Greenberg bought bottles of the same vintages from different sources and could not link specific bottles to specific suppliers. Br. 5; TX97.0001.

#### d. Koch's misleading chart is immaterial

Koch's chart (at 19-24) purports to show "Greenberg's peculiar knowledge" for each purchased bottle. The chart, however, rests on improper inferences and immaterial evidence, and therefore does not establish peculiar knowledge. It is also misleading.[12]

*First*, Koch does not have bottle-specific evidence of Greenberg's knowledge. Like the rest of his brief (*e.g.*, at 6, 14-16), Koch's chart conflates "bottles," "wines," and "vintages," in an attempt to attribute Greenberg's general knowledge about his wines to specific bottles Koch purchased. A cursory review of the chart shows that Koch relies almost entirely on evidence regarding "wines of this type" or "these wines," rather than bottle-specific evidence.[13] Thus, nothing in the chart establishes "peculiar knowledge" regarding the bottles he purchased.

---

[12] The chart's biggest farce might be Koch's false claim (at 10, 20) that Acker "rejected" a 1945 Lafite because its photocopied label was an "obvious sign of inauthenticity." In fact, Acker was willing to sell the bottle with adequate catalog disclosures and never called the label a sign of inauthenticity. TX389; Tr. 456-57. It is undisputed that an authentic bottle can have a photocopied label. Tr. 1967-69.

[13] Greenberg invites the Court to review Koch's cited evidence, which is not connected to Greenberg's knowledge about the bottles in this case. The only exception is Exhibit 200, which Edgerton reviewed and Greenberg included in his "Royal Wine Fake Summary Notes," without certainty that it came from Royal. Tr. 391-92. Yet uncontested evidence showed that Greenberg's employees inadvertently included it in the consignment and that Zachys did not agree with Edgerton's conclusion. Tr. 613, 1654, 2454.

*Second*, *none* of the evidence in Koch's chart was material to Koch's experts, who relied entirely on external features to evaluate authenticity. Tr. 1441-44, 1588. Koch's wine expert admitted that, regardless of other available information, an inspection – and only an inspection – can determine authenticity. Tr. 1380-83, 1397-98. Thus, every example in the chart is legally irrelevant because of Koch's independent access to each bottle's external indicia of authenticity.

*Third*, notwithstanding his chart entries, Koch never proved that any of the bottles he purchased came from Royal. Tr. 1736.[14] More importantly, the fact that Koch's experts drew authenticity conclusions without knowing bottle sources proves that the sources – including Royal – were immaterial.

*Fourth*, neither of Koch's experts relied on vertical cork branding to evaluate authenticity, which Koch's chart claims (at 20) "Greenberg knew meant the wine [*i.e.*, bottle] was counterfeit." In fact, Koch's wine expert admitted that vertical branding was immaterial to his authenticity opinions, Tr. 1479, 1481, and even

---

[14] Although Koch claims otherwise (at 6-7), Koch never proved the origin of the specific bottles he purchased. No one could. *See supra* note 11. For example, although Koch claims (at 21) five magnums of 1950 Lafleur were "[s]ourced from Royal," Greenberg had 24 such magnums, only seven of which came from Royal. TX1102. Koch has no evidence that his five bottles were among the seven from Royal. Nor did Koch prove that his bottles appeared in Greenberg's "Royal Wine Fake Summary Notes," with the exception of Exhibit 200. *See supra* note 13.

changed his mind at trial regarding vertical branding, Tr. 1476-77. Thus, whatever Greenberg's opinion, vertical branding was immaterial.[15]

*Fifth*, the presence of "Bordeaux Wine Locators stickers" on specific bottles meant nothing. Koch's chart claims the stickers prove "peculiar knowledge" because Greenberg thought BWL was "the worst counterfeiting operation in the world."[16] However, the stickers concerned neither Koch's wine expert nor Zachys. Tr. 1460. Zacharia testified that, even if he had seen Greenberg's e-mail, it would not "have affected the work [Zacharia] did in any way." Tr. 1689.

*Sixth*, the fact that Chicago Wine Company ("CWC") and Acker Merrall "returned" or "rejected" bottles of a particular vintage is immaterial.[17] None of the experts in this case needed others' opinions to evaluate authenticity. Tr. 1441-44,

---

[15] No evidence supports Koch's assertion (at 9) that Greenberg was "familiar with the issue of vertically branded corks" before John Kapon rejected wines on that basis in 2004. Kapon's belief was based on convicted felon Rudy Kurniawan, whom Greenberg distrusted. Tr. 680-82. Without any evidence, Koch calls Kurniawan Greenberg's "partner" (at 12) and badly misreads (at 11) Greenberg's e-mail exchange with Kurniawan. TX380; Tr. 255-56.

[16] Koch relies on Greenberg's sarcastic e-mail. TX388. Greenberg did not believe that BWL was a counterfeiter. Tr. 278-79, 620. Nor did anyone else at trial, Tr. 1460, 1829, 1966, including Koch, who bought at the same auction other bottles with BWL stickers that he has never claimed to be counterfeit, *see*, *e.g.*, TX101.0055, TX100.0005 (lot 423).

[17] For example, Koch claims (at 13, 39) he bought a magnum of 1921 Petrus that CWC had rejected as "counterfeit." In fact, CWC returned the bottles because of "unmarked corks" and said nothing about "counterfeit." TX413.0001-2. As for Koch's 1921 Petrus, Zacharia verified that the cork was marked. Tr. 1685. Thus, the only reasonable inference is that Koch did *not* buy the same magnum that CWC returned.

1588.  Moreover, opinions are not facts; Acker Merrall's, CWC's, or Edgerton's opinion that a bottle was inauthentic did not make it so.[18]  Greenberg knew their opinions, just as he knew the opinion of Zachys, his fiduciary, on whose "judgment and integrity" he was "entitled to rely."  *Cristallina S.A. v. Christie, Manson & Woods Int'l, Inc.*, 502 N.Y.S.2d 165, 171-72 (App. Div. 1st Dep't 1986); *see* Tr. 1440-41 (Koch's wine expert:  consignor entitled to rely on auction house).[19]

> 2.  *Even Assuming Greenberg Had "Peculiar Knowledge," Koch's Reliance Was Unjustified as a Matter of Law*

Even when a defendant has peculiar knowledge, reliance may be unjustified as a matter of law based on the transaction's entire context.  Br. 41-42.  Here, Koch was "a sophisticated party confronted with the known risk of a sale" of fine wine "as is" at auction, yet unreasonably chose to spend millions of dollars without taking *any* steps to protect himself.  *Century Pac., Inc. v. Hilton Hotels Corp.*, 354 F. App'x 496, 499 (2d Cir. 2009).

Koch provides no support for his novel theory that a plaintiff can buy his way out of a disclaimer – and out of proving reasonable reliance – by purchasing

---

[18] Koch cannot credibly assert Acker's or CWC's opinions are gospel; he has sued them for fraud, too.

[19] Koch trivializes *Cristallina* (at 46) as a "contract action."  It also involved fiduciary breach and unambiguously held that where, as here, an auctioneer "is selected because of its special fitness for the performance of the duties to be undertaken," consigners are "entitled to rely" on its "judgment and integrity." 502 N.Y.S.2d at 172.  To ignore Greenberg's right to do so would vitiate the fiduciary relationship.

more wine than he can inspect. Purchasing a single bottle without inspection indisputably would render reliance unreasonable. *See Nigro*, 882 N.Y.S.2d at 348. Koch cannot transform unreasonable acts into reasonable conduct by exposing himself to *more* risk while being *less* cautious.

Moreover, Koch faced no economic risk because the refund provision insulated him from loss. Greenberg offered Koch *more* in refund money than the jury awarded in compensatory damages. TX1052. But Koch – on a vendetta for punitive damages – refused to accept the refund because Greenberg did not "admit" fraud. Tr. 2429. In the entire context of this "as is" transaction, Koch's willfully blind reliance was unreasonable as a matter of law.

### B. Greenberg Did Not Make Actionable Misrepresentations

#### 1. *Greenberg Did Not Make Indirect Misrepresentations to Koch*

Koch undisputedly relied on statements in Zachys' Catalog, Tr. 1040, which Zachys, not Greenberg, wrote, Br. 19-20.[20] The dispositive question is whether Zachys' statements can be attributed to Greenberg. Because Zachys had an intermediary, "evaluative role" and exercised expert judgment to "filter[]" what bottles were auctioned and what information was "worthy of communicating," the

---

[20] The *only* statement on which Koch purportedly relied that Greenberg wrote was "a best of the best collection," TX435.0001, which is classic, non-actionable puffery in the Introduction not directed at any specific bottle. Br. 46.

Catalog representations cannot be attributed to Greenberg. *SIPC v. BDO Seidman, LLP*, 746 N.E.2d 1042, 1047-48 (N.Y. 2001); *see* Br. 43-46.

Koch cites (at 42-43) numerous authorities about the "class of persons" to whom "the maker" of a representation may be liable. That begs the question; Greenberg was not "the maker" of the alleged misrepresentations. None of Koch's cases addresses when an intermediary's statements can be attributed to someone else.

Koch erroneously claims (at 14, 44, 65) "Greenberg personally selected the bottles for auction and affirmed their authenticity." The evidence showed that Greenberg made a list of wines "for possible inclusion subject to authentication" and that his employees selected specific bottles for Zachys to consider. Tr. 589-91, 611, 758, 1626, 1630-31.[21] But, regardless of who pulled the bottles from the cellar, Zachys repeatedly inspected them and exercised its independent judgment about which to auction. Br. 16-19, 44-45. The consignment contract – which Koch ignores – gave Greenberg no control over Zachys' choices. Br. 15-16.

Koch argues (at 46) *BDO Seidman* is distinguishable because "Zachys received little of the information it wanted" from Greenberg. No one testified to that. Moreover, pursuant to industry practice, the consignment contract, and New

---

[21] Koch relies on an e-mail in which Greenberg suggested he "personally pulled" 18 bottles. TX528; *but see* Tr. 659-60. Those bottles are not at issue. Moreover, Greenberg's employee testified he understood Greenberg's instruction to "grab the shittiest bottles" to mean "the least attractive bottle. . . . [Greenberg] never told us to give them a fraudulent bottle." Tr. 758.

York law, Zachys exercised independent judgment on which Greenberg was entitled to rely. Br. 6, 15-19, 44-45. If Zachys lacked information to determine a bottle's authenticity, its job was to reject the bottle from the auction, as it had done before. Br. 15. In fact, through multiple inspections, Zachys obtained all necessary information for judging authenticity. Br. 17-19; *see supra* Part II.A.1.c. Consistent with its role as "filter[]," *BDO*, 746 N.E.2d at 1048, Zachys knew a great deal of information about Greenberg's collection that it chose *not* to disclose in the Catalog, *see* Br. 15, and even to Greenberg, *see* TX95 (internal "vetting" e-mail revealing chief auctioneer was "[m]ost concerned with" 23 of the 24 wines at issue).

Koch asserts (at 44, 46) Greenberg "oversaw Zachys in drafting and preparing the catalog" and "exerted editorial control" over it. To the contrary, Zachys controlled the Catalog and the auction. Br. 15-16. The evidence showed indisputably that Zachys wrote the 200-page wine descriptions based on its independent inspections and Greenberg never reviewed them. Br. 20. As for the Introduction, Zacharia wrote it personally, with his picture next to it and his name under it. Tr. 1662 ("Q. Did you draft this? A. I did."); *see* TX101.0006. It contained his "honest opinions and impressions." Tr. 1667. By contrast, Greenberg's involvement was limited: he wrote a single e-mail requesting changes to the *Introduction*, not all of which were accepted. That does not establish oversight and control; it proves the opposite. Br. 19-20.

In arguing to the contrary, Koch mistakenly relies on Greenberg's involvement with lotting (the order in which bottles are grouped and sold). Opp. Br. 46 (citing TX439, TX528). The consignment contract required the parties to "cooperate in establishing lotting" and required Greenberg's "written approval." Br. 16. By contrast, the contract gave Greenberg no control over the Catalog or the bottles Zachys included in the auction.

2. *Alternatively, Koch Has Not Identified Any Actionable Misrepresentations*

None of the "many misrepresentations" that Koch alleges (at 47-50) supports the verdict.

Identifying Bottles. Koch argues (at 47) that, by identifying bottles for Zachys to inspect, Greenberg knew they would be included in the auction and represented as authentic in the Catalog. That ignores undisputed evidence. In previous auctions, Zachys and others had rejected questionable wines from Greenberg's cellar, and Greenberg expected Zachys to do the same in 2005. Br. 18-19. That is standard industry practice, and Zachys abided by it. Br. 6, 15-19. And, by contract, Zachys had final authority over auction inclusion and Catalog description. *Id.*

Catalog Descriptions. Koch contends that the 200-page Catalog descriptions of specific lots for auction implicitly guaranteed authenticity. As a matter of law, the Catalog's express disclaimer of authenticity precludes that argument. Br. 32-34.

22

In any event, the evidence indisputably showed that Zachys wrote the 200-page descriptions and that Greenberg had *no role or review* in that process.  Br. 20.

"Sourced on the Continent."  Koch asserts (at 48-49) that "sourced on the Continent" in the Catalog introduction misrepresented provenance.  Koch does not dispute, however, that *Zacharia* wrote that statement and Koch did not rely on it.  Br. 47.

Puffery.  Koch argues (at 49) puffery can be "actionable under New York law."  By definition, puffery is not actionable as a matter of law.  Br. 46.  Koch cites no case sustaining fraud based on "insincere" puffery.

"Older Bordeaux."  Koch claims (at 49) Greenberg "misrepresented the sources of his older Bordeaux" to Zachys, but he ignores *all* the reasons that statement is not fraudulent.  Br. 47 (disclaimer, materiality, third-party reliance).

Collector.  Koch maintains (at 49-50) Greenberg misrepresented he was a "collector" of wine when, in fact, he sold thousands of bottles.  But it is undisputed that Greenberg collected wines; Koch cites no contrary evidence.  Br. 48.

**C.    Greenberg Did Not Owe Koch A Duty To Disclose**

     1.    *Greenberg Had No Duty To Disclose Readily Available Information to a Stranger*

A defendant has no duty to disclose information that was available but "not pursued by [a] plaintiff[]."  *Aaron Ferer & Sons Ltd. v. Chase Manhattan Bank*,

23

731 F.2d 112, 123 (2d Cir. 1984); *Grumman*, 748 F.2d at 739; *see* Br. 50. Koch ignores this line of cases, which is fatal to his concealment claim.

Greenberg also had no duty to disclose because he did not know Koch. Br. 48-50. Where a plaintiff "failed to show that the [defendant] w[as] aware that [plaintiff] had a false understanding," a duty to disclose fails as a matter of law. *Remington Rand Corp. v. Amsterdam-Rotterdam Bank, N.V.*, 68 F.3d 1478, 1484 (2d Cir. 1995).[22] Greenberg did not know Koch and had no reason to believe he would willfully blind himself to specific disclaimers and inspection and refund rights. *See Amend v. Hurley*, 59 N.E.2d 416, 419 (N.Y. 1944) (no duty to disclose absent "evidence that [defendant] had any idea or knowledge that [plaintiff] had made a mistake").

2.  *Greenberg Made No Partial Statements to Koch*

Koch erroneously claims (at 52-53) Greenberg made "partial statements" creating a duty to disclose. Br. 50-51.

Nothing supports Koch's naked claim (at 52) that "Greenberg represented that the bottles being consigned were authentic." Greenberg specifically disclaimed

---

[22] Koch relies (at 51) on *Donovan v. Aeolian Co.*, 200 N.E. 815 (N.Y. 1936), but ignores that re-selling antique wine "as is" at auction is nothing like selling a used piano as new in a manufacturer's showroom. Br. 51-52. Koch also erroneously relies (at 51-52) on *Minpeco, S.A. v. ContiCommodity Services, Inc.*, 552 F. Supp. 332 (S.D.N.Y. 1982), which held that the defendants' "price mirage" "lure[d] plaintiff] into the market." *Id.* at 337 (alteration in original). Greenberg's reliance on his expert fiduciary to market and conduct the auction is completely different.

authenticity and hired Zachys to inspect, select, and describe the bottles.  Br. 15-19, 32-34.

Koch argues (at 53) Greenberg's e-mail regarding his sources of "older Bordeaux" was misleading and incomplete.  But that e-mail was *to Zachys*, not Koch.  Br. 47.  No case holds that a partial disclosure to an auction house creates a duty to disclose to bidders.  Moreover, Zacharia testified that Greenberg's knowledge of sources "would not have made a difference" because specific bottles could not be linked to specific suppliers.  Tr. 1677.

Finally, Koch argues (at 53) that, "by placing his wines in glossy catalogs with glowing rhetoric, Greenberg induced buyers to believe that Greenberg did not suspect [the bottles] to be counterfeit."  However glossy Zachys' Catalog, it cannot negate an "as is" contract that specifically disclaims authenticity, provenance, and merchantability.

## III.  GREENBERG DID NOT VIOLATE GBL § 349 AND § 350

### A.  The Auction Was Not Materially Misleading

Greenberg cannot be liable under GBL § 349 and § 350 unless a reasonable consumer acting reasonably under the circumstances would have been materially misled about the authenticity of wine sold "as is" and made available for inspection.  Br. 52.  Contrary to Koch's claim (at 56), this Court makes such "reasonableness" determinations as a matter of law.  *See Tasini v. AOL, Inc.*, 505 F. App'x 45, 48 (2d Cir. 2012); *S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp.*, 84 F.3d 629,

636-37 (2d Cir. 1996); *see also Winfield*, 710 F.3d at 53 ("[C]ourts [regularly] hold that reasonableness may be a question of law when the facts are undisputed."). Under the circumstances here, a reasonable consumer would not have been misled. Br. 52-55.

Koch argues (at 55) disclaimers are irrelevant to GBL claims. No case so holds. Koch misreads *Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675 (N.Y. 2012), which held only that disclaimers alone do not "bar" GBL claims at the motion-to-dismiss stage. *Id.* at 676.

Koch also has no answer to cases holding that consumer access precludes conduct from being materially misleading as a matter of law. Br. 54-55. He argues (at 56) "information about the wine's authenticity was not reasonably obtainable." Consistent with industry practice, all material information was available through inspection; if this auction was materially misleading, then so is every other auction that follows industry practice. Br. 6.

## B. Consigning High-End Wine For Auction Is Not Consumer-Oriented Conduct

Greenberg's conduct also does not violate the GBL because it did not potentially affect consumers at large. Br. 55-58. Koch asserts (at 57) it is enough that "Koch was not the only potential victim." But that begs the question whether auctioning high-end, antique wine affects "consumers for the purpose of this statute." *S.Q.K.F.C.*, 84 F.3d at 636. Just as auctioning Hollywood memorabilia

is not "consumer oriented," *Moustakis v. Christie's, Inc.*, 892 N.Y.S.2d 83, 84 (App. Div. 1st Dep't 2009), neither is consigning fine wine.

Koch has no answer to New York cases holding that an intermediary's intervention precludes conduct from being consumer oriented.  Br. 56-57.  That is not a jury question, as Koch contends (at 58).  Koch cites irrelevant cases (at 58 & n.14) about GBL class actions and the statutory standing of wealthy people seeking large damages.  Although a GBL plaintiff need not be a consumer, New York law requires the underlying *transaction* to be consumer-oriented.  Br. 57-58.

## IV.    GREENBERG IS NOT LIABLE FOR PUNITIVE DAMAGES

### A.    The Punitive-Damages Verdict Is Reviewable

Koch erroneously contends (at 62 n.19) Greenberg inadequately preserved his appeal of punitive damages.  Greenberg's pre-verdict Rule 50 motion explicitly challenged Koch's entitlement to punitive damages:  "based on the evidence, no reasonable jury would have a legally sufficient basis to find for Mr. Koch on punitive damages."  Tr. 2474-75.  This Court requires nothing more.  *See Brink's Inc. v. City of New York*, 717 F.2d 700, 705 (2d Cir. 1983) (punitive-damages argument preserved by pre-verdict argument: "there was insufficient evidence to justify submission of the punitive damages issue to the jury"); *Vasbinder v. Ambach*, 926 F.2d 1333, 1338 (2d Cir. 1991) (similar).  Greenberg's Rule 50(a) motion therefore preserved the issue for appeal, Koch identifies no prejudice, and Greenberg's challenge goes to purely legal deficiencies.

**B. Greenberg's Conduct Was Neither Reprehensible Nor Aimed At The Public**

**1.** Regardless of Greenberg's knowledge about his collection, he followed legally sanctioned industry practice by having Zachys inspect his bottles, write their descriptions in the Catalog, authorize bidder inspection, and facilitate any returns. Br. 16-20.

The Court of Appeals' decision in *Ross v. Louise Wise Services, Inc.*, 868 N.E.2d 189 (N.Y. 2007), controls. Br. 60-61. Presenting dueling sides of the "nature-nurture controversy," the defendant adoption agency argued it appropriately withheld a schizophrenic child's hereditary information, while the plaintiff presented contrary evidence. 868 N.E.2d at 194. Because the adoption agency's position could not be "disprove[d]," its fraudulent conduct could not be considered malicious so as to warrant punitive damages. *Id.* at 197. Likewise here, even assuming Greenberg should have disclosed more, Koch is not entitled to punitive damages as a matter of law because Greenberg relied on his fiduciary to market his wines and run the auction.[23]

**2.** Koch admits (at 62) the jury was "properly instructed." Those instructions required "clear, unequivocal, and convincing evidence" that any fraud

---

[23] Koch claims (at 65) *Yuzwak v. Dygert*, 534 N.Y.S.2d 35 (App. Div. 4th Dep't 1988), is "inapposite" because "plaintiffs presented no evidence of willful or egregious conduct." To the contrary, the parties disputed the defendant's "prior knowledge of any vicious propensities." *Id.* at 36.

"was aimed at the general public" or "impl[ied] a criminal indifference to his civil obligations."  Tr. 2502.  *See Charles Adams Importers, Ltd. v. Dana*, 503 N.Y.S.2d 53, 55 (App. Div. 1st Dep't 1986) ("criminal indifference to civil obligations" requires "dealing with the general public") (internal quotations omitted).

Koch has no answer to the inescapable conclusion that Greenberg never intentionally offered inauthentic wine to anyone.  Br. 62-63.  Koch points to no evidence to support such a claim.

Koch accuses Greenberg (at 65) of misrepresenting the reason punitive damages were denied in a similar auction fraud case, but the court's rationale is compelling:  "[T]he misconduct alleged here, which arises from a private contract, does not resemble the egregious wrongdoing that could be considered part of a pattern directed at the public generally, so as to warrant the imposition of punitive damages."  *Moustakis*, 892 N.Y.S.2d at 84.

## CONCLUSION

The Court should reverse and direct entry of judgment for Greenberg.

Respectfully submitted,

  /s/ *David C. Frederick*           

DAVID C. FREDERICK
DANIEL G. BIRD
W. JOSS NICHOLS
KELLOGG, HUBER, HANSEN, TODD,
  EVANS & FIGEL, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
(202) 326-7900
(202) 326-7999 (facsimile)
*Attorneys for Defendant-Counter-
Claimant-Appellant Eric Greenberg*

March 17, 2015

30

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), the undersigned certifies that this brief complies with the applicable type-volume limitations. This brief was prepared using a proportionally spaced type (Times New Roman, 14 point). Exclusive of the portions exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), this brief contains 6,998 words. This certificate was prepared in reliance on the word-count function of the word-processing system (Microsoft Office Word 2007) used to prepare this brief.

/s/ *David C. Frederick*
David C. Frederick

March 17, 2015

**CERTIFICATE OF SERVICE**

I hereby certify that, on March 17, 2015, I electronically filed the foregoing Reply Brief of Appellant Eric Greenberg with the Clerk of the Court for the United States Court of Appeals for the Second Circuit by using the appellate CM/ECF system. All participants are registered CM/ECF users and will be served by the appellate CM/ECF system.

/s/ *David C. Frederick*
David C. Frederick